Claude **RISHER** and Brenda
Faye Risher, Appellants,

v.

**FARMERS INSURANCE COMPANY,**
Respondent.

No. ED 86341.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 13, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 26, 2006.

Application for Transfer Denied
Sept. 26, 2006.

Leonard P. Cervantes, Jennifer Suttmoeller, St. Louis, MO, for appellant.

Daniel E. Wilke, James A. Wilke, St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellants, Claude Risher (individually "Plaintiff Claude Risher") and Brenda Faye Risher (collectively "Plaintiffs"), appeal the judgment of the Circuit Court of the City of St. Louis granting summary judgment in favor of Respondent, Farmers Insurance Company ("Farmers"). In the underlying case, Plaintiffs filed an action against Farmers[1] seeking compensation under an insurance policy provision for uninsured motorist coverage for damages

---

1. Additional Defendants named in the underlying case, but who are not parties to this appeal, are: Tom Golden, Citizens Electric Cooperative, John Doe, John Doe Corporation, Diversified Drilling Services, Inc., Hilyard Drilling Company, Inc., and Ray A. Hilyard.

sustained as a result of the death of their son, John Risher ("Decedent"). We affirm.

On August 17, 2000, Decedent was working for his employer, Townsend Tree Service Company ("Townsend") in Fruitland, Missouri on property owned and managed by Citizens Electric Cooperative ("the Fruitland job"). Decedent was riding on a work platform located at the rear of a vehicle equipped with a water tank ("the Doodlebug"), which was spraying herbicide on brush near power lines. The Doodlebug had seat belts, bumpers, a muffler, tractor wheels, an engine, brakes, and a steering wheel, but did not have flashers, brake lights, back up lights, doors, headlights, a speedometer, a windshield, or a horn.

The Doodlebug was being driven and operated by Decedent's co-employee and foreman, Tom Golden ("Golden"). As Golden drove the Doodlebug in reverse down a hill, Golden lost control, and Decedent fell or jumped from the work platform. Subsequently, the Doodlebug ran over Decedent, causing fatal injuries ("the accident").

On the date of the accident, Plaintiff Claude Risher carried a policy of automobile insurance with Farmers ("the insurance policy"). The insurance policy provided, *inter alia*, for uninsured motorist coverage in the amount of $30,000 per person/$60,000 per occurrence. Under the insurance policy, Farmers only provides uninsured motorist coverage for an insured person's bodily injury caused by accident and arising out of the ownership, maintenance, or use of the uninsured motor vehicle. The insurance policy defines "motor vehicle" as "a land motor vehicle ... but does not mean a vehicle ... [w]hich is a farm type tractor, or any equipment designed or modified for use

principally off public roads while not on public roads."

In 2003,[2] Plaintiffs filed an action against Farmers seeking compensation under the insurance policy's provision for uninsured motorist coverage for damages sustained as a result of the death of Decedent. In its answer, Farmers asserted the affirmative defense that the Doodlebug was not covered by the insurance policy because it does not meet the insurance policy's definition of an uninsured motor vehicle.

On September 5, 2003, Farmers filed a motion for summary judgment, arguing that, *inter alia:*

> [t]he Doodlebug at issue in this matter was not an uninsured motor vehicle in that it does not meet the definition of uninsured motor vehicle under the [insurance] policy ... because the Doodlebug was a farm type tractor, or equipment designed or modified for use principally off public roads and was not on a public road at the time of the accident.

In support of its initial motion, Farmers submitted a photograph of the Doodlebug and a copy of the insurance policy.

On November 6, 2003, Plaintiffs filed a response to Farmers' motion for summary judgment, asserting that, *inter alia:* (1) the Doodlebug was an uninsured motor vehicle under the insurance policy because it "was a modified truck that was driven on highways and thoroughfares" and it "was not used for farming and was principally operated on roads," and (2) alternatively, the insurance policy's definition of an uninsured motor vehicle is either ambiguous or its enforcement is against public policy. In support of their motion, Plaintiffs sub-

---

**2.** Although it is unclear from the record the exact date that Plaintiffs filed their initial petition, Plaintiffs stated in oral argument that they filed their lawsuit in 2003.

mitted the affidavit of Plaintiff Claude Risher, who was employed by Townsend from June to September of 1992.

On August 30, 2004, Farmers filed an amended motion for summary judgment. In support of its amended motion, Farmers submitted part of Golden's deposition.[3] Plaintiffs and Farmers both filed additional responses and replies. Additionally, Farmers filed a supplemental motion for summary judgment. On April 14, 2005, the trial court granted summary judgment in favor of Farmers. This appeal by Plaintiffs followed.

 Our review of a grant of summary judgment is essentially *de novo. ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo.banc 1993). We view the record in the light most favorable to the non-movant. *Id.* Facts set forth in support of the moving party's motion are considered to be true unless contradicted by the non-movant's response. *Id.* A trial court's judgment will be upheld if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Id.* at 380.

In their sole point on appeal, Plaintiffs maintain the trial court erred in granting Farmers' motion for summary judgment.

We will first address Plaintiffs' second sub-point on appeal.

In Plaintiffs' second sub-point on appeal, they contend the trial court's findings with respect to the Motor Vehicle Financial Responsibility Law ("the MVFRL") are outside the summary judgment record made by the parties. The trial court essentially found that the MVFRL does not mandate

liability coverage of the Doodlebug because the MVFRL does not require the Doodlebug to be a registered vehicle.

 When ruling on a motion for summary judgment, a trial court is limited to reviewing what is contained in the motions for summary judgment and the responses thereto. *Mothershead v. Greenbriar Country Club,* 994 S.W.2d 80, 85 (Mo. App. E.D.1999). Where the MVFRL does not mandate liability coverage for a particular type of vehicle, an insurer may exclude such a vehicle from its uninsured motorist coverage without violating public policy. *See Meeks v. Berkbuegler,* 632 S.W.2d 24, 27 (Mo.App. E.D.1982).

 In this case, Plaintiffs raised the issue of the MVFRL themselves when, in their response to Farmers' motion for summary judgment, they alleged that the insurance policy's definition of an uninsured motor vehicle violated public policy.[4] Because this issue was raised in Plaintiffs' response, the trial court properly reviewed whether the MVFRL mandated liability coverage for the Doodlebug to determine whether Farmers could exclude the Doodlebug from its uninsured motorist coverage provision without violating public policy. Therefore, Plaintiffs' contention that the trial court's findings with respect to the MVFRL are outside the summary judgment record is without merit. Sub-point denied.

We will now address Plaintiffs' third sub-point on appeal.

In their third sub-point on appeal, Plaintiffs assert the trial court erred in granting summary judgment in favor of Farmers because there is a genuine issue of materi-

---

3. Golden's entire deposition was submitted by Plaintiffs.

4. Because Plaintiffs have not raised this substantive argument on appeal, Plaintiffs have abandoned this argument. *See Warren v. Combs,* 150 S.W.3d 319, 321 (Mo.App. S.D. 2004).

al fact whether the Doodlebug meets the insurance policy's definition of "motor vehicle."[5]

■ Under Rule 74.04(c), a party moving for summary judgment must make a prima facie case showing it is entitled to judgment as a matter of law. *ITT*, 854 S.W.2d at 381. The prima facie case showing required depends heavily on whether that party is the claimant or the defending party. *Id.* A defending party is the party against whom recovery is sought. *Id.* at 380. One way a defending party moving for summary judgment can make its prima facie case showing is to demonstrate "that there is no genuine dispute as to the existence of *each* of the facts necessary to support [its] properly-pleaded affirmative defense." *Id.* at 381. (emphasis in original).

■ Once the moving party has made its prima facie case showing it is entitled to judgment as a matter of law, the non-movant has the burden to set forth specific facts showing that there is a genuine issue for trial. *Id.* There is a genuine issue for trial where competent materials in the record show that there are two plausible, but contradictory, accounts of the necessary facts. *Id.* at 382. If the non-movant cannot show there is a genuine issue for trial, summary judgment against the non-movant is proper. *Id.* at 381.

■ In general, definitions in an insurance policy are controlling as to the terms used within the policy. *Bowan ex rel. Bowan v. Gen. Sec. Indemn. Co.* 174 S.W.3d 1, 5 (Mo.App. E.D.2005). In interpreting the language used throughout an insurance policy, including the language used within a policy's definition, we give words their ordinary meaning. *See Lupo*

*v. Shelter Mut. Ins. Co.,* 70 S.W.3d 16, 22 (Mo.App. E.D.2002). To ascertain the ordinary meaning of a word, we look to the word's dictionary definition. *Id.*

■ In this case, Farmers, the defending party, pled the affirmative defense that the Doodlebug was not covered by the insurance policy because it did not meet the insurance policy's definition of an uninsured motor vehicle. Accordingly, we will first determine whether Farmers has made its prima facie case by showing there is no genuine dispute as to the existence of each of the facts necessary to support its affirmative defense.

Pursuant to the terms of the insurance policy, in order for a vehicle to meet the insurance policy's definition of an "uninsured motor vehicle," the vehicle must also meet the insurance policy's definition of "motor vehicle." Because the insurance policy defines "motor vehicle," that definition is controlling. The insurance policy's definition of "motor vehicle" does not include a vehicle "[w]hich is a farm type tractor, or any equipment designed or modified for use principally off public roads while not on public roads" ("the policy definition"). Because it is undisputed that at the time of the accident the Doodlebug was "not on public roads," at issue is whether Farmers has shown there is no genuine dispute that the Doodlebug is "a farm type tractor, *or* any equipment designed *or* modified for use principally off public roads." (emphasis added).

Golden asserts in his deposition that the Doodlebug is "farm equipment." Logically, "any equipment" under the policy definition includes "farm equipment."

The main issue in this case is whether Farmers has shown there is no genuine

---

**5.** It appears to be undisputed that Decedent, as Plaintiff Claude Risher's son, was an "insured person" on the date of the accident.

dispute that the Doodlebug is "modified for use principally off public roads." The dictionary definition of "modify" or "modified" is "to change the form or properties of for a definite purpose." *Webster's Third New International Dictionary* 1452 (1976).

Golden states in relevant part: (1) the Doodlebug is a John Deere manufactured skidder, which was converted by the placement of a water tank, (2) the water tank was filled with water and a herbicide mixture to spray brush, (3) the Fruitland job consisted of "driving the [D]oodlebug down the right-of-way and spraying the brush under the power line[s]," (4) "right-of-way" means "off the road," (5) the Doodlebug was capable of being driven on the road, (6) he drove the Doodlebug at least a quarter of a mile on country roads and highways to get from one spot to another in order to do his work, but would have a vehicle behind him with flashers on, and (7) he used the Doodlebug off the road to do work. Golden's statements indicate that the Doodlebug had a water tank attachment placed on it to be used for the sole purpose of off the road spraying of vegetation.

Even though Golden asserts that the Doodlebug could be and was in fact sometimes driven on public roads, he states that this was only done to get from one spot to another in order to do work. Furthermore, Golden also states that he used the Doodlebug off the road to do work, which consisted of driving the Doodlebug off the road and spraying brush.

From Golden's deposition, we conclude that Farmers has shown that there is no genuine dispute that the Doodlebug is "equipment ... modified for use principally off public roads," and that they made their prima facie case showing entitlement to judgment as a matter of law. Thus, we will next determine whether Plaintiffs, through their submission of Plaintiff Claude Risher's affidavit, met their burden of showing that there is a genuine issue for trial as to whether the Doodlebug meets the definition of a motor vehicle under the insurance policy.

Plaintiff Claude Risher states that the Doodlebug is a "modified truck." This account of the facts, like Golden's, also falls within "any equipment" under the policy definition because the dictionary definition of "equipment" includes "trucks." *See State ex rel. Toastmaster v. Mummert,* 857 S.W.2d 869, 872 n. 2 (Mo. App. E.D.1993), *quoting Webster's New Universal Unabridged Dictionary* (2d Ed.1983). Thus, both Golden's and Plaintiff Claude Risher's descriptions of the Doodlebug constitute "any equipment" under the policy definition.

■ Like Golden, Plaintiff Claude Risher also states that the Doodlebug was sometimes driven on public roads and that the Doodlebug had a tank, which was used for off the road spraying of vegetation. In addition, Plaintiff Claude Risher asserts that "[w]hile [he] was an employee of [Townsend] and operating ... or working on these vehicles, they were primarily operated on roads." Even viewing the record in the light most favorable to Plaintiffs as non-movants, this statement, which specifically relates to a period of time almost eight years before the accident occurred, taken alone, is not plausible evidence that the Doodlebug involved in the accident in this case was primarily operated on public roads. Plaintiffs do not present any evidence that the Doodlebug was modified for any purpose other than for off the road spraying of vegetation.

Plaintiffs have presented no plausible evidence that the Doodlebug involved in the accident was being used, for the purpose it was modified for, i.e. for spraying

vegetation, while on public roads. Accordingly, Plaintiffs have failed to show that there is a genuine issue for trial as to whether the Doodlebug meets the definition of a motor vehicle under the insurance policy.

Therefore, there is no genuine issue of material fact whether the Doodlebug is "equipment . . . modified for use principally off public roads," and thus not covered by the policy definition. Because Farmers is entitled to judgment as a matter of law on its affirmative defense of no coverage, the trial court did not err in granting summary judgment in favor of Farmers. Sub-point denied.

We will now address Plaintiffs' first sub-point on appeal.

In their first sub-point on appeal, Plaintiffs maintain that the record reflects that the Doodlebug is an "uninsured motor vehicle" under the insurance policy.

As discussed above, under the terms of the insurance policy, a vehicle only meets the definition of an "uninsured motor vehicle" if the vehicle also meets the definition of "motor vehicle." Because we have found that there is no genuine issue of material fact that the Doodlebug is not covered by the policy definition, Plaintiffs' argument to the contrary has no merit. Sub-point denied.

Therefore, the trial court did not err in granting summary judgment in favor of Farmers.