**STATE of Missouri ex rel. OLD DOMINION FREIGHT LINE, INC., Relator,**

v.

**The Honorable David C. DALLY, Twenty–Ninth Judicial Circuit, Jasper County, Missouri, Respondent.**

No. SD 31711.

Missouri Court of Appeals,
Southern District,
Division Two.

June 14, 2012.

Deborah K. Dodge, Springfield, MO, for Appellant.

Gregory F. Payne, Carthage, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

Old Dominion Freight Line, Inc. ("Old Dominion"), filed a Petition for Writ of Mandamus asking this Court to direct the trial court to grant Old Dominion's Motion for Summary Judgment based on Freddie L. Pruiett's ("Pruiett") failure to file his personal injury action within the applicable statute of limitation. We make permanent our preliminary writ of mandamus.

## Factual and Procedural History

On February 14, 2007, Pruiett and Clifton Miller, Jr. ("Miller"), were involved in a motor vehicle collision in Labette County, Kansas. Pruiett was driving a tractor-trailer unit, owned by TRI–COM, Inc., westbound on U.S. Highway 160. Miller was driving an Old Dominion tractor-trailer unit southbound on U.S. Highway 59. Miller stopped at a stop sign at the intersection of U.S. Highway 160 and U.S. Highway 59, but then proceeded to pull into the path of Pruiett's vehicle. According to the police report no injuries were reported, but there was property damage in excess of $1,000, and Pruiett's vehicle was towed away. Six to seven hours later, Pruiett sought medical treatment at Freeman Occupational Health Clinic ("Freeman") in Joplin, Missouri. Pruiett's medical record showed he sought treatment for a headache and stiffness in his neck that did not begin for several hours following the accident. The medical record specifically noted:

> SUBJECTIVE: Mr. Pruiett is a 34 year old male who was involved in a motor vehicle accident. He states he was a driver of a van or a truck when a semi tractor trailer pulled out in front of him and he hit it going 45 miles per hour. He did have his seatbelt on. He did not impact himself any where [sic] in the vehicle, but he did throw his head forward in a whiplash type injury. He was not really concerned about injury initially. He felt pretty good, but as the anxiety calmed down for him he has

began [sic] having pain in the cervical spine and has developed a headache from the back of his head associated with the neck up over to the top of the head. He complains of increasing stiffness in the neck and a headache. He has no other areas of tenderness, stiffness or pain at this time.

On October 30, 2009, Pruiett filed suit in Jasper County, Missouri, against Old Dominion and Miller [1] for personal injuries he sustained as a result of the February 14, 2007 collision in Kansas.[2] Pruiett alleged that Miller failed to yield to Pruiett's vehicle in that Miller entered the roadway in front of Pruiett and should have been "required to stop at the intersection as directed by traffic control...."

On December 14, 2009, Old Dominion filed its "Separate Answer of [Old Dominion] to [Pruiett]'s Petition." Old Dominion asserted the defense that Pruiett's claim was "barred by operation of the running of the applicable statute of limitations, K.S.A. Sec. 60–513(a)(4), 2009, as adopted by R.S. Mo. 516.190." [3] K.S.A. 60–513(a)(4) provides that "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated[,]" shall be brought within two years. Old Dominion also filed a "Motion for Summary Judgment" arising out of this affirmative defense.

Pruiett contended that the Missouri statute of limitations applies as opposed to the Kansas statute because "[i]t is with that treatment and diagnosis of [Pruiett]'s

---

1. Miller was never served in this matter and the summons was returned to the court marked "Non–Est" (not to be found).

2. Pruiett was a resident of Missouri; Miller and Old Dominion were both non-residents of Missouri. Thus, Pruiett alleged jurisdiction was proper pursuant to section 506.500, RSMo 2000, because Old Dominion conducted business in the state of Missouri, and venue was proper due to the fact that Pruiett resided in Jasper County. No issues have been raised regarding jurisdiction or venue.

3. All references to Kansas statutes are to K.S.A.2009, unless otherwise indicated. All references to Missouri statutes are to RSMo 2000, unless otherwise indicated.

injuries that his cause of action accrued and the statute of limitations began to run in Missouri, ..." Pruiett's response proffered two additional material facts with supporting exhibits: (1) at the time of the collision, there were no reported injuries; and (2) Pruiett sought treatment at Freeman in Joplin for a headache and stiffness in his neck that did not begin for several hours following the accident. The supporting exhibits included the "State of Kansas Motor Vehicle Accident Report" and Pruiett's medical record from Freeman.

Old Dominion admitted Pruiett's additional facts, but denied that the statements were material as to determining where Pruiett's injuries or cause of action arose.

The parties submitted briefs and conducted oral argument before the trial court on July 22, 2011. On August 5, 2011, the trial court overruled Old Dominion's Motion for Summary Judgment. Following this ruling, Old Dominion sought relief from this Court and a preliminary writ of mandamus was issued. Pruiett filed a writ answer, but did not file suggestions opposing the preliminary writ, nor a brief.[4]

Old Dominion's sole point relied on contends the trial court erred in denying its Motion for Summary Judgment because

Old Dominion is immune from suit as a matter of law in that the trial court misapplied Missouri's borrowing statute, which would require Pruiett to file his action within two years from the date of the collision because Pruiett's cause of action originated in Kansas. As such, the issue pertinent to our resolution of this matter is whether the undisputed facts in this case establish the cause of action originated in Kansas and thus, is barred by the Kansas two-year statute of limitations.[5]

## Standard of Review

The denial of a motion for summary judgment is reviewed under the same standard of review as an order granting summary judgment. *See State ex rel. Public Housing Agency of the City of Bethany v. Krohn,* 98 S.W.3d 911, 913 (Mo.App. W.D. 2003). Appellate review of a motion for summary judgment is *de novo. Kinnaman–Carson v. Westport Ins. Corp.,* 283 S.W.3d 761, 764 (Mo. banc 2009). The Court reviews the record in the light most favorable to the party against whom summary judgment is sought. *City of Bethany,* 98 S.W.3d at 913. Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.

---

4. "While there is no penalty for that omission, it requires this [C]ourt to adjudicate [Old Dominion's] claims of error without the benefit of whatever argument, if any, [Pruiett] could have made in response." *McClain v. Kelley,* 247 S.W.3d 19, 23 n. 4 (Mo.App. S.D.2008) (internal quotation and citation omitted). We, however, note that Pruiett argued in his answer to Old Dominion's petition for writ that K.S.A. 60–513(a)(4) was not the applicable statute of limitation because "while the accident occurred in Kansas, [Pruiett]'s injuries were not sustained and capable of ascertainment until hours after the collision occurred, when [Pruiett] was thereafter in the State of Missouri." Pruiett alleged he did not have symptoms until he arrived in Missouri and did not know he had damages until the

symptoms of the injuries appeared. Alleging that his injuries were not ascertainable until he was in Missouri, Pruiett contended that there is a "disputed issue of material fact which obviates intervention by this Court." Unfortunately, we have no briefing from Pruiett in support of this position, nor any argument explaining it. Furthermore, due to Pruiett's failure to file a brief, he would not be permitted to orally argue before this Court. *See* Missouri Court of Appeals, Southern District, Special Rules—Rule 1.

5. Missouri's statute of limitations for personal injury actions is five years. § 516.120. Thus, if Missouri law were applicable, Pruiett's claim would not be time barred.

*ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 381 (Mo. banc 1993). A defending party may establish a right to judgment as a matter of law by showing "that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *City of Bethany,* 98 S.W.3d at 913 (internal quotation and citation omitted) (emphasis in original).

"Whether a writ should issue in a particular case is a question left to the sound discretion of the court to which application has been made." *Derfelt v. Yocom,* 692 S.W.2d 300, 301 (Mo. banc 1985). A writ may be appropriate to prevent an abuse of judicial discretion and to avoid irreparable harm to a party, including unnecessary and expensive litigation. *See State ex rel. Henley v. Bickel,* 285 S.W.3d 327, 330 (Mo. banc 2009). Because the undisputed facts show Pruiett's claim was barred by the Kansas statute of limitations and the trial court refused to grant summary judgment, a writ of mandamus is the appropriate remedy in this case to prevent unnecessary and expensive litigation.

### Analysis

■ "When a cause of action 'originates' in another state ... the foreign state's statute of limitations becomes applicable through Missouri's borrowing statute, section 516.190." [6] *Ferrellgas, Inc. v. Edward A. Smith, P.C.,* 190 S.W.3d 615, 620 (Mo.App. W.D.2006). Section 516.190 provides: "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." § 516.190. "Thus, if the foreign state's statute of limitations bars the action, then Missouri's borrowing statute acts to bar the action here as well." *Ferrellgas,* 190 S.W.3d at 620.

■ " 'Originated,' as used in the statute, has been construed to mean 'accrued.' " *Thompson by Thompson v. Crawford,* 833 S.W.2d 868, 871 (Mo. banc 1992). Section 516.100 states in relevant part that

> for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, ...

" 'Because a cause of action originates where it accrues, § 516.100 not only determines *when* a cause of action accrues but *where* it accrues for purposes of determining whether the borrowing statute operates to bar an action.' " *Wright v. Campbell,* 277 S.W.3d 771, 774 (Mo.App. W.D. 2009) (quoting *Day v. deVries and Associates, P.C.,* 98 S.W.3d 92, 95 (Mo.App. W.D. 2003)). "Accordingly, a cause of action accrues, and 'originates' for purposes of § 516.190, when and where the damage 'is sustained and is capable of ascertainment.' " *Wright,* 277 S.W.3d at 774.

■ Missouri law does not declare that a cause of action originates when tortious conduct occurs. Notably, the Supreme Court of Missouri has emphasized that "the mere occurrence of an injury itself does not necessarily coincide with the accrual of a cause of action" because "[s]uch a reading would deprive the additional language 'and is capable of ascertainment' of

---

**6.** Generally, Missouri considers statute of limitation issues procedural and therefore governed by Missouri law when Missouri is the forum state. *Wright v. Campbell,* 277 S.W.3d 771, 773 (Mo.App. W.D.2009). Application of the borrowing statute is one important statutory exception. *Id.*

any meaning." *Martin v. Crowley, Wade and Milstead, Inc.*, 702 S.W.2d 57, 58 (Mo. banc 1985). However, the supreme court has also rejected that the proper interpretation of "capable of ascertainment" is "when plaintiff subjectively should have discovered the injury and damages." *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 581 (Mo. banc 2006).

> [I]f damages are not capable of ascertainment at either the time of the wrong or the time of [actual] discovery of the wrong and resulting damages, then what is the test for when damages are capable of ascertainment? Although this Court has not previously clearly articulated a specific, generally applicable test to be used in making this determination, a consistent approach is evident upon careful review of this Court's decisions from the last 40 years: *the statute of limitations begins to run when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury."*

*Id.* at 582 (quoting *Business Men's Assurance Co. of America v. Graham*, 984 S.W.2d 501, 507 (Mo. banc 1999)) (emphasis in original).

■ Our supreme court emphasized that the capable-of-ascertainment test is an objective one:

> The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages. At that point, the dam-

ages would be sustained and capable of ascertainment as an objective matter. *Powel*, 197 S.W.3d at 584–85. The supreme court reiterated that " 'all possible damages do not have to be known, or even knowable, before the statute accrues.' " *Id.* at 584 (quoting *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997)). However, "the mere existence of the wrong and some nominal damages is not enough. Plaintiff must also have notice of these facts or of something that puts plaintiff on notice to inquire further." *Powel*, 197 S.W.3d at 584. We emphasize that the test is not when a reasonable person *knows* that damages have occurred, but is when that person would have notice of a *potentially* actionable injury.

■ "Because the capable[-]of[-]ascertainment standard is an objective one, where relevant facts are uncontested, the statute of limitations issue can be decided by the court as a matter of law."[7] *Powel*, 197 S.W.3d at 585. Here, there are no material questions of fact at issue between the parties. The undisputed facts reveal the collision and tort occurred in Kansas on February 14, 2007. Missouri law, however, directs us not to merely accept this occurrence as dictating *when* and *where* the cause of action accrued. *See* § 516.100; *Martin*, 702 S.W.2d at 58. Nevertheless, in applying the objective capable-of-ascertainment test to the unique facts in this case, we find a reasonable person would have been put on notice of possible injury and substantial damages due to the collision, and would have undertaken to ascertain the extent of the damages.[8]

■ The alleged tortious conduct committed at the time of the collision was

---

7. " 'However, when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide.' " *Powel*, 197 S.W.3d at 585 (quoting *Lomax v. Sewell*, 1 S.W.3d 548, 552–53 (Mo. App. W.D.1999)).

8. Old Dominion relies on *Goff v. Fowler*, 323 S.W.3d 797 (Mo.App. W.D.2010), where the

immediately evident after Miller's vehicle collided with Pruiett's vehicle.[9] Most significant, however, is the fact that the collision caused Pruiett's head to be thrown forward in a whiplash-type motion. Specifically, the medical record indicated Pruiett described this occurrence to the treating physician: "[Pruiett] states he was a driver of a van or truck when a semi tractor trailer pulled out in front of him and he hit it going 45 miles per hour.... He did not impact himself any where [sic] in the vehicle, but *he did throw his head forward in a whiplash type injury.*" (Emphasis added). A collision that results in the sudden jerking of the driver's head would place a reasonable person on notice that an injury and substantial damages may have just occurred. Vehicular collisions are common occurrences that often do not result in any injuries; however, the facts in this case clearly demonstrate there was a significant impact to Pruiett's vehicle that caused not only structural damages to his vehicle, but that caused Pruiett's head to be thrown forward in a whiplash-type motion. "All that is required for accrual is that some damage be sustained and capable of ascertainment." *Day*, 98 S.W.3d at 96. Pruiett's injury was actually sustained at the time of the collision and the fact that he was aware his head was thrown forward in a whiplash-type motion was sufficient to place a reasonable person on notice of such an injury. Thus, there was sufficient evidence to place a reasonable person on notice of an actionable injury at that point.[10]

█ If we were to deem that the damages were not capable of ascertainment until Pruiett actually felt the pain and other symptoms resulting from his whiplash injury, we would be applying a subjective test—not the objective capable-of-ascertainment test laid out by the legislature and Missouri courts. Thus, it is immaterial—on these specific facts—that Pruiett was not initially concerned, did not imme-

Western District noted the claim originated in Kansas as that is where the collision occurred. However, in *Goff*, the parties agreed the claim was controlled by the Kansas statute of limitations, and the court did not apply an objective capable-of-ascertainment test, as this issue was not in dispute. *Id.* at 801. Similarly, in other cases cited by Old Dominion, the courts concluded the claims originated in the states where the collisions occurred, but none of these cases involved facts similar to this case. While generally a personal injury cause of action will originate in the state where the collision occurred due to the nature of most vehicular collisions, the objective capable-of-ascertainment test must be applied to the facts of each case. As a result, the decision in this case might very well be different if different damages were sustained.

9. In fact, the police report indicated Pruiett's vehicle had to be towed away.

10. This case is distinguishable from *Natalini v. Little*, 185 S.W.3d 239 (Mo.App. S.D.2006), which Pruiett relied on in his response to Old Dominion's Motion for Summary Judgment. In *Natalini*, a Missouri doctor treated a Kansas resident in Joplin, Missouri. *Id.* at 241–42. Although the doctor's office was located in Missouri, and the doctor failed to properly diagnose in Missouri, the patient's cancer grew and infected the patient primarily when he was in Kansas and thus, the Court deemed the Kansas statute of limitations applicable. *Id.* at 245. Not only is *Natalini* distinguishable because the cancer first appeared in Kansas, progressed in Kansas, and the plaintiff's death occurred in Kansas, but also the injury suffered was a slowly developing injury—one which an individual would have no indication he is suffering from until it manifested itself in some way. *See id.* at 245–46. Courts have noted that these slowly developing types of injuries represent a unique set of facts where an individual is "unaware of the cause of [the] injury because the causal connection has not been made by the medical community." *See Harris–Laboy*, 972 S.W.2d at 525. In contrast, in Pruiett's collision, his head was thrown forward providing notice of his injury.

diately report the injury, and did not seek treatment until hours later in Missouri, because "[d]amage is sustained and capable of ascertainment when it *can be* discovered or made known, not when the plaintiff actually discovers the injury or wrongful conduct." *Harris–Laboy v. Blessing Hosp., Inc.,* 972 S.W.2d 522, 524 (Mo.App. E.D.1998) (emphasis in original). If we were to decide otherwise, our concern is it might encourage forum shopping in circumstances where a party might be foreclosed in a cause of action in another state, and then jump to Missouri in hopes of finding a more favorable statute of limitations.

Accordingly, the undisputed facts in this case establish the cause of action originated in Kansas and is barred by the Kansas two-year statute of limitations when we apply Missouri's objective capable-of-ascertainment test. We hereby enter a permanent writ in mandamus directing Respondent to enter an order sustaining Old Dominion's Motion for Summary Judgment.

JEFFREY W. BATES and DANIEL E. SCOTT, JJ., concur.